| | AUSA: Daniel Shin | Telephone: (313) 226-9516 |
|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: Hillary Barber | Telephone: (313) 300-4295 |

# UNITED STATES DISTRICT COURT
### for the

### Eastern District of Michigan

United States of America
   v.

Kimani Bean

Case No. 26-mj-30458

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 30, 2026 _____ in the county of _____ Macomb _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with Intent to Distribute Controlled Substances |
| 18 U.S.C. 924(c) | Possession of a Firearm in Furtherance of a Drug-Trafficking Crime |
| 18 U.S.C. 922(g) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Hillary Barber, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: July 31, 2026

_____
*Judge's signature*

City and state: Detroit, Michigan

HON. ELIZABETH A. STAFFORD, U.S. Magistrate Judge
*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT</u>

I, Hillary Barber, being duly sworn, depose and state the following:

## INTRODUCTION

1.      I am a Special Agent ("SA") of the United States Drug Enforcement Administration ("DEA"). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am currently employed by the DEA and have been since September 2018. During my tenure as a Special Agent with the DEA, I completed the Basic Agent Training Program in Quantico, Virginia and was assigned to the Detroit Field Division where I have been since January 2019. Prior to that I was a Special Agent with the United States Secret Service since September 2017, where I also completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Georgia and Special Agent Training Course at the James J. Rowley Training Center located in Maryland.

2.      I have both assisted in and led numerous narcotics investigations that have led to the seizure of narcotics and the arrests of numerous individuals. I have used various methods of investigation including, but not limited to, physical

1

surveillance, electronic surveillance, phone toll analysis, records research, executed search warrants, trash searches, photo and video analysis, and interviews of confidential informants, defendants, and witnesses. I have discussed with law enforcement officers, cooperating defendants, and informants, the methods and practices used by narcotics distributors.

3.     I have assisted in the execution of multiple federal and state narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics. I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. Additionally, I have participated in many aspects of drug investigations including but not limited to, undercover operations, conducting physical and electronic surveillance, and arrests. As a result, I am familiar with narcotics traffickers' methods of operation including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking.

4.     I am aware of the following information from several sources, including but not limited to, my own personal observations and participation in this investigation and my review and analysis of oral and written reports.

5.     I make this affidavit from personal knowledge based on my participation in this investigation, including the writing and review of reports by myself and/or other law enforcement agents, communications with others who have personal

knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the details or facts related to this investigation.

## PROBABLE CAUSE

6. I, along with other law enforcement personnel, have developed probable cause that on July 30, 2026, Kimani BEAN violated the following federal statutes: Possession with the intent to distribute fentanyl and methamphetamine, 21 U.S.C § 841(a)(1), possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1).

*Case Initiation*

7. In June of 2026, DEA Detroit investigators were contacted by DEA Knoxville investigators and advised of a target in the Metropolitan Detroit area believed to be trafficking illegal narcotics from Detroit, Michigan, to Knoxville, Tennessee. Knoxville Police Department (KPD) investigators initially identified the narcotics trafficker as "Cuz." DEA Detroit became aware through a confidential source (CS) [1] that "Cuz" drives a maroon minivan or a maroon sedan.

---

[1] The CS has provided credible and reliable information during the initial debriefing. This information detailed various drug distribution networks already known to law enforcement through previous and ongoing investigations. The CS demonstrated

The CS provided phone numbers used to contact "Cuz" which includes (865) 315-1130 (identified herein after as BEAN PHONE 2). During the course of this investigation, the CS was provided a photograph of Kimani BEAN, who the CS stated appeared to be "Cuz."

8.      DEA Knoxville provided DEA Detroit with phone number (586) 419-0049 (identified herein after as BEAN PHONE 1),[2] an address of interest for BEAN—11800 Common Rd, Warren, Michigan, 48093—and two vehicles registered to BEAN—a 2009 Chrysler Town and Country minivan, Tennessee plate BRJ5268 (identified herein after as the BEAN VEHICLE) and a 2007 Buick LaCrosse, Tennessee plate 313BCBT.

---

intimate knowledge of fentanyl's characteristics from years of purchasing controlled substances, making him/her well-versed in the trafficking and distribution of illegal drugs, including the terminology, jargon, and schemes commonly used by illicit drug distributors and their customers. Furthermore, the CS was familiar with current prices and packaging methods for cocaine and other drugs within a specific area in Tennessee. I believe the information provided by the CS in this investigation is deemed credible and reliable, as much of it has been corroborated by independent investigations conducted by myself and other law enforcement agents. It is believed that the CS has not intentionally misled or knowingly provided false information during cooperation.

[2] During the course of the investigation, DEA Knoxville obtained federal search warrants out of the Eastern District of Tennessee authorizing the collection of location data of BEAN PHONE 1 and BEAN PHONE 2. DEA Knoxville shared the location data with DEA Detroit investigators. During surveillance of BEAN during controlled purchases or other physical surveillances in conjunction with the location data of BEAN PHONE 1 and BEAN PHONE 2, investigators were able to corroborate BEAN as the user of BEAN PHONE 1 and BEAN PHONE 2.

*Controlled Purchases Involving BEAN and Co-Conspirator A.C.*

9.      In June and July 2026, DEA Detroit assisted DEA Knoxville in three controlled purchases of fentanyl. During the controlled purchases, at the direction of DEA Knoxville, the CS would contact BEAN to arrange for the purchase of fentanyl. At the direction of BEAN, the CS would then meet with A.C. at a predetermined location in Tennessee to conduct the exchange of fentanyl for Official Advance Funds (OAF). During these controlled purchases, which occurred in Tennessee, DEA Detroit would surveil BEAN in the Greater Detroit, Michigan, area. During one controlled purchase, just prior to the exchange between A.C. and the CS, surveillance was able to observe BEAN with a small black flip phone in his left hand, and a smart phone, possibly an iPhone due to the use of Air Pods that were observed, in his right hand. Surveillance also advised that BEAN appeared to be speaking on earbuds, while manipulating a second phone. During this same controlled purchase, the CS told controlling investigators that A.C. was on the phone with BEAN, a.k.a. "Cuz", and spoke with BEAN via A.C.'s phone. Pen register review conducted by DEA Knoxville later identified that A.C.'s phone was in contact with BEAN PHONE 1 for approximately one hour – identifying that BEAN was in contact with A.C. for the full duration of the controlled purchase.

10.     During the timeframe of a second controlled purchase, BEAN was observed by DEA Detroit and appeared to be talking on his phone. Pen register review

5

conducted by DEA Knoxville later identified that A.C.'s phone was in contact with BEAN PHONE 1 for approximately fifty minutes – identifying that BEAN again was in contact with A.C. for the duration of the controlled purchase.  This pattern led investigators to believe that BEAN would coordinate the narcotics transactions, even from outside of Tennessee.

11.   During each of these three controlled purchases, DEA Detroit would conduct surveillance on BEAN and would observe him depart from 11800 Common Road, Warren, Michigan (identified herein after as COMMON RESIDENCE), in the BEAN VEHICLE and go to his place of employment, Universal Contracting Services.

12.   During these three controlled purchases, A.C. provided CS with a greyish powdery substance, consistent with fentanyl, which were processed as DEA drug exhibits and sent to the DEA Mid-Atlantic Laboratory for analysis. Two of the three exhibits were analyzed and determined to be fentanyl, and the third exhibit is pending analysis.

 *Arrest of Kimani BEAN and Execution of State Search Warrants on July 30, 2026*

13.   On July 28 and 30, 2026, DEA Detroit obtained state search warrants for three residences and one storage unit believed to be utilized and associated with BEAN. Of these locations, two contained evidence of BEAN's drug trafficking

operation: 11800 Common Road, Warren, Michigan (COMMON RESIDENCE) and 17666 Albion Street, Detroit, Michigan (ALBION RESIDENCE).

14. On July 30, 2026, members of Warren Police Department Special Response Team (SRT) executed state search warrants at the COMMON RESIDENCE. The COMMON RESIDENCE has been identified by investigators as BEAN's primary residence, where physical and electronic surveillance have observed him at virtually daily, including most mornings and overnight, consistent with being one's place of residence. Warren Police Department SRT encountered BEAN and L.W., BEAN's suspected girlfriend or friend, at the residence. During the search of the residence, investigators located two semi-automatic pistols—an FN Herstel Five-seveN (serial number 386178407) which was located under a mattress in the main bedroom and a second FN Herstel Five-seveN (serial number 386306247) which was located in a storage bin of men's clothing in a secondary bedroom—and multiple smartphones and flip phones. Mail addressed to BEAN as well as medication prescribed to BEAN was located in the residence and in the secondary bedroom. Investigators also observed numerous items of male clothing, including construction-wear similar to what BEAN has been observed wearing while working, strewn in the living room and the secondary bedroom.

15. Based on my training and experience, I know it is common for narcotics traffickers to carry numerous cellular devices on their person or to store at their

respective residences in order to communicate with various facets of their drug trafficking organization and to maintain cellular devices that are separate from their personal contacts or legitimate work contacts.

16.     Additionally, as identified previously in this investigation, BEAN is a felon and, therefore, cannot legally possess or store firearms within his residence. On or about May of 1991, BEAN was convicted of delivery/manufacture of a narcotic 50 to 449 grams in Wayne County, Michigan, and sentenced to 10 years' imprisonment. On or about October of 2000, BEAN was sentenced to eight years' imprisonment for second-degree murder in Wayne County, Michigan.

17.     On July 30, 2026, members of DEA SRT also executed state search warrants at the ALBION RESIDENCE. The ALBION RESIDENCE was identified by investigators as a place frequented by BEAN via electronic surveillance (the BEAN VEHICLE and both BEAN PHONES) approximately three to four times a week on a weekly basis, often frequenting the residence after he was completed with work in the late afternoon and early evening hours. As recently as July 27, 2026, physical surveillance showed BEAN depart the ALBION RESIDENCE in the BEAN VEHICLE and also showed the BEAN VEHICLE present at the ALBION RESIDENCE. Additionally, an open-source query of the ALBION RESIDENCE identifies the listed owner of the property as "Tuesday Bean," a 60-year-old female who has a current address in Warren, Michigan, and is believed to

8

be a family member of BEAN. BEAN's financial records show a reoccurring Zelle

payment on March 31, 2026, in the amount $1500.00 from BEAN's known

checking account to a party identified as Tuesday Bean—believed to be a

mortgage or rent payment based on the amount and the recurrence of the payment.

Based on my training and experience, I know it is common for drug traffickers to

utilize friends, family members, or other unwitting associates to use as nominees

for residences, utilities, and other subscriber information to thwart law

enforcement detection.

18.    A search of the ALBION RESIDENCE resulted in the seizure of an

aggregated amount of approximately 18 pounds of suspected methamphetamine (a

portion of which was field tested and tested positive for the presence of

methamphetamine), an aggregated amount of approximately 1680 gross grams of

suspected fentanyl found throughout the residence (a portion of which was field

tested and tested positive for the presence of fentanyl), five firearms (including a

Colt 1911 (serial number C20497), a Beretta 926 (serial number BER2578882), a

Ruger P345 (serial number 664-17126), a Norinco B-West Sporter (serial number

03762), and a Charter Arm revolver (serial number 17467), and processing

equipment including hydraulic presses, blenders, gloves, respirator masks, and

various cutting agents. Investigators also observed indicia belonging to BEAN at

9

the residence including various mail, traffic tickets, and letters addressed to BEAN while he was in prison.

19.    The ALBION RESIDENCE did not appear to be lived-in, as it lacked basic furnishings and appeared to be under renovation. Additionally, the presence of various quantities of drugs throughout the residence, processing equipment (e.g., blenders, presses, and cutting agents), and several firearms has led me to believe that the ALBION RESIDENCE was utilized primarily as a "stash" or storage location for BEAN's drugs and drug processing equipment.

## Conclusion

20.    Based on the facts established throughout this affidavit, probable cause exists to believe that Kimani BEAN has committed violations of 21 U.S.C § 841(a)(1), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. § 922(g)(1).

_____
Hillary Barber, Special Agent
Drug Enforcement Administration

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Honorable Elizabeth A. Stafford
United States Magistrate Judge

Dated: July 31, 2026

10